IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 5:23-cr-00536 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| DAMIAN BELL, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Before the Court is Defendant Damian Bell's ("Bell") Motion to Suppress filed on July 15, 2024. (Doc. No. 23.) On July 29, 2024, the United States of America ("the Government") filed a Response in Opposition and, on August 1, 2024, a Supplement to its Response. (Doc. Nos. 25, 26.) Bell did not file a reply in support of his Motion.

For the following reasons, the Court DENIES Bell's Motion to Suppress.

**I.    Procedural History**

On September 9, 2023, a grand jury charged Bell with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 1) and possession with intent to distribute a substance containing heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2). (Doc. No. 8.)

The charges stem from a January 20, 2023 traffic stop in Lorain, Ohio. During the stop, the officer on scene learned that Bell had an outstanding warrant for his arrest and arrested Bell. The officer searched Bell incident to his arrest and found on his person, among other items, an Apple iPhone. On January 24, 2023, a Lorain Municipal Court judge signed a search warrant authorizing a search of the iPhone.

On July 15, 2024, Bell moved to suppress all evidence found during the search of his cell phone. (Doc. No. 23.) Bell argues that the search warrant affidavit lacks a probable cause nexus between the phone and his suspected drug trafficking. (*Id*. at PageID# 75.) On July 29, 2024, the Government filed a Response to Bell's Motion to Suppress. (Doc. No. 25.) And, on August 1, 2024, the Government supplemented its Response with a copy of the search warrant affidavit. (*See* Doc. No. 26-1.)

On August 8, 2024, the Government moved to cancel the evidentiary hearing the Court had set at Bell's request. (Doc. No. 27.) The Government argued that Bell's Motion to Suppress raises purely legal issues and that the Court may only consider information within the four corners of the search warrant affidavit when deciding those legal issues. (*Id*.) Bell did not oppose the Government's Motion. The Court granted the Government's Motion and canceled the evidentiary hearing.

## II. The Search Warrant Affidavit

In the search warrant affidavit, Detective Craig Payne[1] avers the following information.

On January 20, 2023, Officer James Ventura of the Lorain Police Department stopped a vehicle near East 28th Street and Pearl Avenue in Lorain, Ohio. (Doc. No. 26-1, PageID# 103.) Bell was in the front passenger seat of the vehicle. (*Id*.) During the stop, Officer Ventura learned that Bell had an outstanding warrant for his arrest. (*Id*.)

When Bell also learned of his warrant and that Officer Ventura was going to remove him from the vehicle, Officer Ventura saw Bell "quickly move[] his left arm between the front two seats towards

---

[1] Detective Payne has worked for the Lorain Police Department for over seventeen years. (Doc. No. 26-1, PageID# 99.) Since January 2022, he has been assigned as a detective with the Narcotics and Special Investigations Unit. (*Id*.)

2

the ground behind the seat." (*Id*. at PageID# 104.) Officer Ventura noted that "[t]his behavior is common when a person is trying to conceal or discard . . . weapons or narcotics." (*Id*.)

Officer Ventura removed Bell from the vehicle and secured him in handcuffs. (*Id*.) Officer Ventura then observed two plastic baggies underneath the driver's seat of the vehicle "in the exact location that he had observed [Bell] reaching" before his arrest. (*Id*.) Those baggies weighed 11.2 and 13.0 grams and contained a white substance that field-tested positive for cocaine. (*Id*.) Officer Ventura also searched Bell's person incident to Bell's arrest. On Bell, he found a digital scale, $576 in cash, and an Apple iPhone, which is the subject of the search warrant. (*Id*.)

Detective Payne averred that the quantity of the suspected cocaine in the baggies meant that Bell possessed the drugs with the intent to distribute rather than for personal use. (*Id*.) Detective Payne also wrote that Bell had multiple prior state and federal convictions for drug trafficking and drug possession with intent to distribute. (*Id*. at PageID# 104-05.)

Based on his training and experience, Detective Payne averred that drug trafficking requires "continuous access to telephone and internet communications." (*Id*. at PageID# 101.) And he asserted that drug traffickers "often keep records relating to their associates . . . [and] records relating to drug transactions and money" on their cell phones. (*Id*.) Therefore, he believed that evidence of Bell's suspected drug trafficking would be found on Bell's cell phone. (*Id*. at PageID# 106.)

**III.  Law and Analysis**

    **A.  Probable Cause Standard**

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a

3

'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).

Additionally, "a probable-cause 'nexus' must connect these two together: [t]here must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). Law enforcement can infer a nexus from "the type of crime being investigated, the nature of things to be seized, and the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014).

In applying the above probable cause standard, "the [issuing] magistrate uses a practical standard, based on factual and practical considerations of every day life, rather than a technical standard." *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). Courts should "accord the magistrate's determination" of probable cause "great deference." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)). The question is "whether the magistrate had a substantial basis for his conclusion" that probable cause existed. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019).

B. The Search of Bell's Cell Phone

Bell argues that the affidavit makes only an "anecdotal[]" reference to cell phones. (Doc. No. 23, PageID# 75.) Thus, he contends that the search warrant affidavit does not contain probable cause to search his cell phone because it lacks any "evidence . . . that . . . connect[s] his possession of a cell phone, which is in 2024 ubiquitous, with the alleged possession of the cocaine found on the rear floorboard of the vehicle." (*Id.* at PageID# 76.)

4

The Government responds that Bell was "a convicted drug trafficker, had multiple tools of a drug trafficker on his person . . . , and a cell phone to communicate with customers and suppliers," all of which was in Detective Payne's affidavit.  (Doc. No. 25, PageID# 84.)  The Government argues that this information, together with Detective Payne's training and experience, established a sufficient probable cause nexus between Bell's phone and his alleged drug activity.  (*Id*.)

In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court observed that:

> [M]odern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.  . . .  Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals.

*Id*. at 385, 401.  While the Supreme Court held that law enforcement may not search the data on a cell phone incident to an arrest, it cautioned that its "holding, of course, is not that information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest."  *Id*. at 401.

Here, the police sought and obtained a search warrant.  To be sure, the search warrant affidavit must still contain a nexus between Bell's suspected drug trafficking and his cell phone.  In *United States v. Bass*, 785 F.3d 1043 (6th Cir. 2015), the Sixth Circuit found such a nexus where the defendant "was suspected of crimes in which cell phones were frequently used" and "had continued to use his cell phone before" his arrest.  *Id*. at 1049.  Similarly, in *United States v. Merriweather*, 728 F.App'x 498 (6th Cir. 2018), decided under the good-faith exception, the Sixth Circuit found a nexus where law enforcement recovered the searched cell phone in the defendant's car along with suspected oxymorphone pills and cocaine.  *Id*. at 505.  Those facts together with the affiant's experience and training that "drug dealers use cell phones to coordinate with conspirators, customers, and suppliers"

5

were sufficient for "an officer [to] reasonably conclude that the affidavit provided probable cause to believe [the defendant's] cell phone contained incriminating evidence." *Id*.

Conversely, in *United States v. Ramirez*, 180 F.Supp. 3d 491 (W.D. Ky. 2016), a district court found a nexus lacking where the affidavit relied only on the fact that the defendant had a cell phone on him during his arrest for an alleged drug conspiracy and the affiant's experience and training that cell phones are used to further such drug conspiracies. *Id*. at 495, *distinguished in Merriweather*, 728 F.App'x at 506.

Like *Bass* and *Merriweather* and unlike *Ramirez*, the search warrant affidavit in this case contained particularized facts connecting Bell's suspected drug trafficking to his cell phone. First, when Officer Ventura stopped the vehicle Bell was in and notified Bell that there was a warrant out for his arrest, Officer Ventura observed Bell place something on the ground behind the driver's seat in an apparent attempt to hide it. Officer Ventura later learned that Bell was attempting to hide baggies of suspected cocaine. And based on Detective Payne's experience and training, the quantity of cocaine in those baggies was indicative of distribution. Second, when Officer Ventura searched Bell, he found not only the iPhone in question, but also a large quantity of cash and a digital scale, which further supported his inference that Bell was engaged in drug trafficking. Third, Detective Payne knew that Bell had two prior state-court convictions for drug trafficking, a federal conviction for possession with intent distribute, and that Bell had been charged in another state-court case for possession and trafficking of cocaine and fentanyl. Lastly, Detective Payne drew on his experience and training and averred that cell phones are "important, if not essential," to drug traffickers, and that Bell would likely have records of his suspected drug trafficking on his phone, such as the addresses

and telephone numbers of his associates and other "records relating to drug transactions and money." (Doc. No. 26-1, PageID# 101-02.)

In sum, the search warrant affidavit contained considerably more than the mere fact that Bell was arrested with the cell phone on his person. Rather, law enforcement found the cell phone on Bell's person near "the very drugs" he has been charged with possessing, *Merriweather*, 728 F.App'x at 506, and along with a digital scale and cash, which are "tools of the [drug] trade." *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014). Accordingly, the search warrant affidavit contained sufficient probable cause to search Bell's cell phone. *See United States v. Lavallis*, 515 F. Supp. 3d 686, 691 (E.D. Mich. 2021) (concluding that "probable cause to search a cell phone exists simply because cell phones discovered in proximity to crime or contraband almost invariably contain incriminating evidence").

### C. The Good-Faith Exception

The good-faith exception applies when law enforcement "conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

A well-trained officer would have known that the search was illegal in the following four instances:

> [1] [I]f the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . [2] where the issuing magistrate wholly abandoned [her] judicial role . . . [3] [where] a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . [and [4] where] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be

searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) (quoting *Leon*, 478 U.S. at 923).

"The good-faith standard is 'less demanding' than the 'threshold required to prove the existence of probable cause.'" *United States v. Powell*, 603 F. App'x 475, 477 (6th Cir. 2015) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). All it requires is that the affidavit establish "*some* connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." *United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005).

Bell argues that the good faith exception does not apply because "[t]here are no facts in the search warrant affidavit from which a reasonable officer could conclude that [Bell's] cell phone contained incriminating evidence" and that a reasonable officer would have recognized that the affidavit was so lacking in indicia of probable cause. (Doc. No. 23, PageID# 77.)

As explained above, the search warrant affidavit does contain "some connection" between Bell's suspected drug trafficking and his cell phone. Law enforcement found Bell's cell phone near the drugs he has been charged with possessing and alongside a digital scale and cash. Given the close proximity of Bell's cell phone to the drugs and drug paraphernalia, it was reasonable for officers to believe the search warrant was valid. *See United States v. Metzger*, 2022 U.S. Dist. LEXIS 151460 at *19 (N.D. Ohio Aug. 23, 2022) (Lioi, J.) ("That the phone in question was discovered in the same apartment where officers found suspected drugs, a scale, and drug paraphernalia would have further reinforced an officer's reasonable belief that [the defendant's] cell phone could be searched pursuant to the warrant and the drug investigation."). Accordingly, even if the search warrant affidavit lacked

8

a sufficient probable cause nexus, law enforcement's reliance on the search warrant to search Bell's cell phone was objectively reasonable.

IV.     Conclusion

For the foregoing reasons, the Court denies Bell's Motion to Suppress.  (Doc. No. 23.)

**IT IS SO ORDERED.**

Dated: August 15, 2024                             *s/ Pamela A. Barker*
                                                            PAMELA A. BARKER
                                                            UNITED STATES DISTRICT JUDGE